**SIGNED THIS: March 5, 2018**

_Thomas L. Perkins_

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **BRYAN J. GIBSON and** | ) | Case No.   12-81186 |
| **HOLLY R. GIBSON,** | ) | |
| Debtors. | ) | |

**O P I N I O N**

This matter is before the Court for decision on the motion of Michael D. Clark, the Chapter 13 Trustee, to dismiss the Chapter 13 case filed by Brian and Holly Gibson (Debtors) without a discharge, notwithstanding that the payments required by the plan to be made by the Debtors to the Trustee have been completed. The Trustee contends that the Debtors' failure to make the postpetition payments on their 2nd mortgage precludes discharge and requires dismissal.

The Debtors filed a Chapter 13 petition on May 11, 2012.  Their amended Chapter 13 plan, confirmed on August 7, 2012, provided for payments over a five-year term, the maximum allowable by the Bankruptcy Code.  Pursuant to that plan, the Debtors would make payments to the Trustee in the amount of $350 per month for sixty months.  The plan provided that the Trustee would cure a prepetition arrearage on the 2nd mortgage on their residential real estate in the amount of $9,311.26.

1

The plan also provided that the Debtors would make the regular postpetition mortgage payments to

PNC Bank, N.A. (PNC) for the 1st and 2nd mortgages on their residence. In September 2013, PNC filed a

stay relief motion on account of a payment default on its 1st mortgage, which was resolved by entry of

an agreed order permitting the Debtors to cure the default.

On June 30, 2017, following years of consistent practice in this district, the Trustee docketed his

request for final fees indicating that the plan payments had been or were about to be completed.  On

July 21, 2017, the Trustee filed two Notices pursuant to Rule 3002.1(f) of the Federal Rules of

Bankruptcy Procedure, pertaining to the mortgages of PNC. In addition to stating that the Debtors had

completed all payments under the plan, the Notices stated that the regular mortgage payments were to

be paid direct by the Debtors to PNC. The Notice pertaining to the 2nd mortgage stated that the

prepetition arrearage of $9,311.26 had been paid in full by the Trustee. On August 2, 2017, PNC filed the

response required by Rule 3002.1(g), agreeing that the prepetition default on the 2nd mortgage had

been fully cured, but stating that the Debtors were in arrears on the postpetition payments under the

2nd mortgage in the amount of $18,809.56, which arrearage dated back to June 11, 2012, one month

after the chapter 13 case had been filed.

Armed with that information, the Trustee, retreating from his position that the plan had been

completed, turned back to section 1307(c)(6) and moved for dismissal of the case, asserting that the

Debtors' failure to maintain postpetition mortgage payments on the 2nd mortgage constitutes a

material default with respect to a term of the confirmed plan and precludes them from receiving a

discharge as they have failed to complete "all payments under the plan" as required by section 1328(a).

In response, the Debtors, maintaining that they are entitled to a Chapter 13 discharge, assert that their

failure to make the 2nd mortgage payments was due to their mistaken belief that those payments were

to be made by the Trustee, that their failure is excusable and they should not be punished for an

innocent mistake. They also blame PNC for not filing a stay relief motion as to the 2nd mortgage during

2

the term of the plan that would have brought the error to their attention and to the attention of the

Trustee at an earlier stage of the case when it could possibly have been rectified without jeopardizing

their discharge.  A trial was held on December 4, 2017, at which the Debtors testified.

At the trial, it was evident that the Debtors were attempting to use their chapter 13 case to save

their house. Their testimony indicated that they did not fully understand that the second loan obtained

from PNC was, in fact, secured by a junior mortgage on the real estate. Even though their plan clearly

specified that the payments on both mortgages were to be made direct by the Debtors, they both

testified that they did not understand that they were supposed to continue making the payments on the

2nd mortgage loan. Their testimony was corroborated by the fact that they never made a single

payment on that loan after their bankruptcy petition was filed. They testified that they understood their

attorney to have told them that they would only have to make the payments on the 1st mortgage. They

did not recall being told by the Trustee at the first meeting of creditors that they were to continue to

make the regular payments on both mortgage loans.  The matter was taken under advisement at the

close of the trial.   After giving careful consideration to the matter, this Court has determined that the

Trustee's motion should be denied.

ANALYSIS

It should be noted at the outset that the Debtors' 2nd mortgage loan with PNC is a debt secured

only by a security interest in real property that is the Debtors' principal residence so that the Debtors

may not modify the rights of PNC with respect to that secured claim. 11 U.S.C. §1322(b)(2). In the

confirmed plan, the Debtors have exercised their right under section 1322(b)(5) to cure the prepetition

payment arrearage while maintaining the regular postpetition mortgage payments. As such, the debt is

excepted from discharge. 11 U.S.C. §1328(a)(1).

Section 1328(a) directs the bankruptcy court, after completion by the debtor of all payments under the plan, to grant the debtor a discharge.  This Court, in seventeen years on the bench, has never dismissed a chapter 13 case without discharge, where the required payments to the trustee were completed, for the reason that the debtor failed to make all of the direct mortgage payments. Nor has this Court's research uncovered any such cases in other jurisdictions prior to the bankruptcy court decision in *In re Heinzle,* 511 B.R. 69 (Bankr. W.D. Tex. 2014).  While the statutory term "all payments under the plan" has been in place in section 1328(a) since the Bankruptcy Code became effective in 1978, it had not previously been construed as a basis for dismissal without discharge where direct payments were in arrears.

Behind the Trustee's expanded interpretation of "all payments under the plan" as including direct payments is a line of cases of recent vintage, beginning with *Heinzle*. See, also, *In re Hanley,* 575 B.R. 207 (Bankr. E.D.N.Y. 2017); *In re Thornton,* 572 B.R. 738 (Bankr. W.D. Missouri 2017). Some courts following *Heinzle* regard the interpretation of the phrase "payments under the plan" to be plain and unambiguous, as encompassing all payments referred to in the confirmed plan.  *In re Evans*, 543 B.R. 213 (Bank. E.D. Va. 2016), *aff'd Evans v. Stackhouse*, 564 B.R. 513 (E.D. Va. 2017).  This Court disagrees. Chapter 13 debtors are permitted to bypass the trustee and pay certain creditors direct. *Matter of Aberegg,* 961 F.2d 1307 (7th Cir. 1992). In this Court's view, whether direct payments are payments "under the plan" for purposes of section 1328(a) is not discernible from the statutory text. Either interpretation is plausible, meaning the statute is ambiguous. A general policy is recognized favoring resolution of ambiguities in the Bankruptcy Code in favor of debtors and even more so where the provision at issue affects a debtor's right to a discharge. *New Neighborhoods, Inc. v. West Virginia Workers' Comp. Fund,* 886 F.2d 714, 719 (4th Cir. 1989); *In re Trentadue,* 837 F.3d 743,749 (7th Cir. 2016).

4

Perhaps the first question to be addressed is why has this issue cropped up now?  It is apparent

that what triggered this recently identified theory of dismissal without discharge was the adoption of

Rule 3002.1, added by the 2011 amendments to the Federal Rules of Bankruptcy Procedure. The Rule

requires a creditor that holds a lien on the debtor's principal residence to disclose, in response to the

trustee's notice of final cure payment, whether the debtor is current on the postpetition mortgage

payments.  Prior to the adoption of Rule 3002.1, where a debtor was making postpetition mortgage

payments direct to the creditor, the trustee would ordinarily have no knowledge as to whether the

debtor was current on those payments unless a pleading had been filed in the case alleging a default,

such as a stay relief motion. No provision of the Bankruptcy Code or Rules requires a debtor to report a

default on direct payments. It is safe to say that from 1978 until very recently, countless Chapter 13

debtors received a discharge despite an uncured default in payments to a creditor made direct by the

debtor, either because the trustee was unaware of the default or because a default on direct plan

payments was not viewed as a basis to seek dismissal without discharge. "The usual practice is that the

Chapter 13 trustee signals completion of payments when the trustee has received all that the plan

requires the trustee to disburse to creditors. Discharges are routinely entered in Chapter 13 cases

without regard to whether the debtor has completed payments directly to creditors." Keith M. Lundin &

William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, §349.1, at ¶29, Sec. Rev. June 17, 2004,

www.Ch13online.com.

It is equally clear that Rule 3002.1 was not intended to serve as the impetus for dismissal

without discharge. Rather, it is universally recognized that the Rule was intended to benefit debtors by

better ensuring the fresh start to a Chapter 13 debtor who completes a plan, by providing a mechanism

for review and a forum for resolving disputes over whether the debtor's obligations to the mortgage

holder are current at the conclusion of the bankruptcy case. See *In re Tollios,* 491 B.R. 886, 888 (Bankr.

N.D. Ill. 2013). Thus, the recent trend favoring dismissal without discharge as a punitive remedy for a

5

debtor's failure to pay all direct payments is occurring not as a consequence of a statutory amendment

reflecting a change in legislative policy, but merely by the happenstance of the introduction of Rule

3002.1, a Rule adopted for an entirely different and debtor-friendly purpose.

Section 1328 provides for two alternative forms of discharge. Section 1328(a) provides for a full

compliance discharge available to debtors who have completed all payments under the plan. Section

1328(b) provides for a hardship discharge available, if certain conditions are met, to debtors who have

not completed the payments under the plan. Thus, one of the purposes, perhaps the primary purpose,

of identifying those debtors who have completed all payments under the plan is to distinguish between

debtors who are eligible for a full compliance discharge and those who are eligible only for a hardship

discharge.

In section 1328(a), "all payments under the plan" is used to define when completion of

payments occurs (thus triggering entitlement to a full compliance discharge), while the similar but

different alternative phrase "provided for by the plan" is used to describe the scope of the discharge. 11

U.S.C. §1328(a). The use of different terminology implies an intended distinction. "Provided for by the

plan," has been expansively construed to mean that a plan "makes a provision" for, "deals with," or

even "refers to" a claim. *Rake v. Wade,* 508 U.S. 464, 474 (1993). Congress could have defined the event

of plan completion as "completion by the debtor of all payments provided for by the plan." Instead,

Congress chose to use a different phrase. In this Court's view, the alternative phrase "under the plan"

was intended to have a narrower effect, allowing for the possibility that not all creditors holding debts

*provided for by the plan* are receiving payments *under the plan.* There may be some payments made to

creditors who are provided for by the plan that are *not* payments under the plan. The most logical line of

demarcation is between payments made by the trustee from funds received from the debtor versus

payments made by the debtor direct to a creditor. It follows that the resolution of the difference in

phraseology is to construe the requirement under section 1328(a) of "completion by the debtor of all

payments under the plan," to mean the payments that the debtor is required to make to the trustee.

Moreover, section 1328(a)'s mandate that after completion of the payments, "the court shall

grant the debtor a discharge," creates a statutory entitlement in favor of the debtor. *West v. Costen,* 826

F.2d 1376, 1379 (4th Cir. 1987)(once debtor's payments are completed, bankruptcy court has no choice

but to grant discharge). With respect to this entitlement to discharge, Courts have construed

"completion by the debtor of all payments under the plan," to occur at the time the debtor tenders to

the trustee all of the payments under the confirmed plan that the debtor was required to pay to the

trustee. *In re Smith,* 237 B.R. 621 (Bankr. E.D. Tex. 1999); *In re Celeste,* 310 B.R. 286 (Bankr. D. Md.

2004). Once the debtor's payments to the trustee are completed, the statutory entitlement to a

discharge arises and cannot be affected by the subsequent filings under Rule 3002.1.

Interpreting the term "all payments under the plan" to mean the payments made by the debtor

to the trustee is consistent with how a similar statutory provisions has been construed. Section 1329(a)

provides for modification of a plan after confirmation but only "before the completion of payments

under such plan." 11 U.S.C. §1329(a). It is well settled that "completion of payments" under this

provision occurs when the debtor pays to the trustee the full amount required by the confirmed plan.

*Matter of Casper,* 154 B.R. 243, 247 (N.D. Ill. 1993); *In re Ezzell,* 438 B.R. 108, 115-16 (Bankr. S.D. Tex.

2010); *In re Sounakhene,* 249 B.R. 801, 804 (Bankr. S.D. Cal. 2000).

Under section 1322(d)(2), "the plan may not provide for payments over a period that is longer

than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a

period that is longer than 5 years." 11 U.S.C. §1322(d)(2). Since a plan may not provide for payments

beyond the maximum term of 5 years, it follows that payments on long-term debts that extend beyond

the term of the plan, such as most mortgage loans, where the regular payments are being maintained

via direct payments by the debtor, cannot be payments *under the plan.* Where the trustee is serving as

the conduit for the debtor's regular mortgage payments during the term of the plan, it may be arguable

that those conduit payments are *under the plan*, but where the debtor is making direct mortgage

payments to the creditor, the direct payments, even during the term of the plan, are not payments

*under the plan.*

Pursuant to section 1322(b)(2), a Chapter 13 plan may modify the rights of secured creditors,

"other than a claim secured only by a security interest in real property that is the debtor's principal

residence."  11 U.S.C. §1322(b)(2).  Section 1322(b)(5) authorizes a debtor's plan to provide for the

curing of any defaults and maintaining of regular payments on any secured or unsecured debt that

would otherwise extend beyond the term of the plan ("cure and maintain" claims). A plan utilizing the

cure and maintain power essentially splits the creditor's secured claim into two separate claims --- the

underlying debt and the arrearages. *Rake v. Wade,* 508 U.S. at 473.  In this district, a Chapter 13 debtor's

regular postpetition mortgage payments are usually paid by the debtor direct to the mortgagee or

servicer. Upon confirmation of a plan, it is only the funds paid by the debtor to the trustee that are

property of the bankruptcy estate. *Matter of Heath,* 115 F.3d 521, 524 (7th Cir. 1997)(where

confirmation of a plan vests all of the property of the estate in the debtor by operation of §1327(b), the

only portion of the debtor's post-confirmation wages that become property of the estate are those

funds paid to the trustee). Future earnings of the debtor which are not needed to fund the required

payments to the trustee never become property of the estate. *In re Ziegler,* 136 B.R. 497 (Bankr. N.D. Ill.

1992). So it is non-estate funds that provide the source of the direct payments made by the debtor to

the mortgage creditor.

Neither is it necessary for a creditor who is to receive a direct payment from the debtor to first

have an "allowed claim" obtained by filing a proof of claim. The purpose served by an allowed claim in

bankruptcy is to permit the claimant to participate in the distribution of property of the bankruptcy

estate. *Red River Resources, Inc. v. Collazo,* 2015 WL 1846498, at *3 (N.D. Cal.); *In re Trigee Foundation, Inc.,* 2017 WL 3190737 (Bankr. D.C.). PNC filed a proof of claim for the 2nd mortgage but did not file a claim for the 1st mortgage which was not in arrears on the petition date. That a mortgage creditor whose postpetition mortgage payments are being maintained by the debtor through direct payments is not the holder of an allowed claim, and is being paid from funds of the debtor that are not property of the bankruptcy estate or otherwise subject to the control or administration of the trustee, are factors that weigh in favor of a determination that those direct payments are not "payments under the plan."

Although a Chapter 13 trustee initially has a statutory duty to investigate a debtor's financial affairs, upon confirmation of the debtor's plan, the primary role of the Chapter 13 trustee is to administer the plan by disbursing funds received from the debtor to the holders of allowed claims according to the terms of the plan.  If the debtor fails to make payments to the trustee as required by the plan, the trustee may seek dismissal or conversion pursuant to section 1307.  In addition, section 1329 permits the trustee to seek modification of the plan, but only before the payments under the plan have been completed. 11 U.S.C. §1329(a). A trustee may monitor the debtor's post-confirmation income, usually by reviewing the debtor's tax returns, requesting plan modifications where appropriate. However, upon a showing that a debtor's postconfirmation disposable income warrants an increase in plan payments, the increased payments are prospective only. *In re Alonso,* 570 B.R. 622, 630-31 (Bankr. D. Idaho 2017). There is no provision in the Bankruptcy Code that would authorize a trustee to seek retroactive recovery of excess disposable income. Disposable income is "projected" at the time of confirmation and, unless specifically ordered by the court, a debtor has no obligation to report subsequent changes to his income or expenses.

Nothing in the Bankruptcy Code imposes an affirmative duty on the trustee to confirm that all direct payments are being made to creditors during the term of the plan. The trustee's responsibilities are limited; the trustee is not charged with serving as plenary guardian of the debtor's financial affairs.

9

See *Matter of Heath, supra.* The post-confirmation duties of administration are focused upon ensuring that the debtor pays to the trustee the payments required by the confirmed plan and that those funds are distributed by the trustee in accordance with the plan. Secured creditors who receive direct payments from the debtor are expected to protect themselves. As a general rule, when a debtor fails to pay a secured creditor, whether the payments are being made by the trustee or the debtor, the appropriate remedy is granting the creditor relief from the automatic stay to permit it to enforce its rights against the collateral, upon a motion filed by that particular creditor. If stay relief is granted, that creditor has little interest in whether the plan continues or the case is converted or dismissed. Moreover, if the debtor wishes to avoid stay relief by negotiating a loan modification or other work-out arrangement with a secured creditor, it is the debtor, not the trustee, who does the negotiating. With respect to long-term, nonmodifiable, nondischargeable mortgage loans, where the debtor is maintaining the postpetition payments direct to the creditor, the trustee's role is limited to distributing estate funds to cure the prepetition arrearage, if any. The trustee is responsible for administering the plan and the payments required to be made by him. The division of responsibilities between the trustee and the debtor supports the determination that direct payments made by the debtor are not payments under the plan.

Additional support for this Court's position is found in section 1328(a), which was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to require a debtor, as a condition of receiving a Chapter 13 discharge, to certify that he has paid all domestic support payments, including payments that came due during the course of the plan. The Bankruptcy Code does not now and never has required a debtor to certify that he paid all other direct payments that came due during the course of the case. The absence of such a certification requirement is inconsistent with the view that section 1328(a) imposes an absolute condition to discharge that the debtor has made all direct mortgage payments as well as any other direct payments such as long-term car loan payments. Congress

could have required that a debtor certify, as a precondition to discharge, that he made all direct

payments. Instead, Congress elected to impose a certification requirement only with respect to

domestic support payments.

Chief among bankruptcy courts' concerns is that the rules that apply to bankruptcy cases are

fairly and consistently applied.  Similarly situated debtors deserve equal treatment under the applicable

provisions of Chapter 13 of the Bankruptcy Code. In this Court's experience, the Chapter 13 trustees do

an admirable job of faithfully applying the provisions and requirements fairly and consistently among all

debtors. If the Trustee's position was adopted, however, through no fault of the trustees, inconsistent

results would be sure to follow. In this Court, Chapter 13 debtors who completed their payments to the

trustee received a discharge without regard to the status of their direct payments. Since *Heinzle*, a few

courts have now started a trend that is likely to deny similarly situated debtors a discharge despite the

absence of any amendment to the Bankruptcy Code that would indicate a newfound legislative intent

placing heightened importance on the status of direct payments. The trustees will often have no

information about the status of direct payments other than domestic support payments required to be

certified and "cure and maintain" mortgage payments subject to Rule 3002.1. If all direct payments are

considered to be payments "under the plan," it is only a default as to some of those payments, that

would likely result in dismissal without discharge. The trustee may or may not have information as to

the status of other direct payments. So disparate results could occur fortuitously, not by any

shortcoming of the trustees who are not charged with auditing a debtor's direct payments. Construction

of a statute in a manner that leads to inconsistent results is to be avoided. *Sierra Club v. Indiana-*

*Kentucky Elec. Corp.,* 716 F.2d 1145, 1151 n.6 (7th Cir. 1983).

The Debtors' testimony that they did not understand that they were to continue to make the

payments on their 2nd mortgage direct to PNC was credible. The Trustee does not contend that the

evidence supports a finding that the Debtors' failure to make those payments was part of a scheme to

11

defraud the Trustee or any creditors. The Debtors were using Chapter 13 in an attempt to save their

house and had nothing to gain by remaining current on the 1st mortgage payments while defaulting on

the 2nd mortgage payments. Neither could they have anticipated that PNC would take no action in

response to the payment default until the very end of the five-year term of the plan. Had PNC filed a

stay relief motion as to the 2nd mortgage earlier in the case, it is likely that the Debtors would have

negotiated a repayment agreement just as they did with respect to an earlier default on the 1st

mortgage. This is not a case where the Debtors defrauded unsecured creditors by including a phantom

expense in their schedules or otherwise understating their disposable income. The only creditor harmed

by the payment default was PNC which, for reasons not explained at the trial, never took any action in

the case to enforce its right to be paid on the 2nd mortgage until it moved for stay relief after the

Debtors had made the last plan payment to the Trustee.  Unsecured creditors have received all that they

were entitled to under the terms of the confirmed plan.

The Trustee takes the position that even if the Debtors made an innocent mistake, they are not

entitled to receive a discharge, giving section 1328(a) an absolutist interpretation. What is at stake,

however, is the entitlement to a discharge, the single most important benefit of bankruptcy for

individual debtors. The provisions in the Bankruptcy Code that provide for denial or revocation of

discharge and confirmation are premised on affirmative misconduct by the debtor. For example, a

Chapter 13 discharge may be revoked only if obtained by the debtor through fraud, 11 U.S.C. §1328(e),

and a Chapter 13 order of confirmation may be revoked if procured by fraud, 11 U.S.C. §1330(a). Here,

there was no fraud or other misconduct, the absence of which makes it difficult to see why dismissal

without discharge is the appropriate remedy for an innocent mistake that caused no harm to unsecured

creditors. In addition, the Trustee's position suffers from the malady of placing the burden upon and

presuming to give the authority to Chapter 13 trustees to decide, in the exercise of unfettered

discretion, which direct payment defaults are "material" so as to warrant the filing of a motion seeking

12

dismissal without discharge and which defaults may be overlooked. The Bankruptcy Code neither gives

trustees this discretion nor sets forth any standards as to how such discretion would be exercised.

This Court disagrees with the absolutist view that section 1328(a) should be construed in a way

that would make every uncured default on a direct payment grounds for dismissing the case without a

discharge. At most, whether a Chapter 13 debtor's failure to make direct payments warrants denial or

revocation of a discharge should be determined on a case-by-case basis, under other sections of the

Bankruptcy Code, taking into account the debtor's state of mind and the effect on creditors. Where, as

here, a debtor's conduct was truly innocent and unsecured creditors were not harmed, denial of

discharge is not an appropriate remedy. The punishment does not fit the crime. See *In re Starkey,* 2016

WL 3034738 (Bankr. D.C.)(where a mortgage claim is provided for under §1322(b)(5) and thus excepted

from discharge, the discharge of other debts is of no concern to the mortgage creditor and the lack of

payments to the mortgage creditor is of no concern to other creditors, so that "denying a discharge in

that circumstance would seem silly.")

An additional, procedural concern exists with respect to the Trustee's motion. In this case, the

five-year plan term has elapsed so modification of the plan is no longer an option. Even if the Trustee's

view of section 1328(a) were to be accepted, dismissal under section 1307(c)(6) is not necessarily an

available procedural option at this stage. Instead, if a debtor is not eligible for a full compliance

discharge under section 1328(a), the debtor should still be permitted to pursue the option of a hardship

discharge under section 1328(b) which is available to those debtors who have not completed all

payments under the plan. Nonpayment of direct payments would be relevant to the inquiry under

section 1328(b)(1), whether the debtor should "not justly be held accountable" for the failure to

complete such payments. If a hardship discharge is denied, then the case would be closed without the

entry of a discharge order and resort to section 1307 would be unnecessary.

13

As used in section 1328(a), the phrase "all payments under the plan" is ambiguous with respect to whether direct payments are or are not "under the plan." There is no indication in the Bankruptcy Code that reflects a congressional intent to deny a Chapter 13 debtor a discharge under the circumstances of the case before this Court. As set forth herein, various provisions of and policies underlying the Bankruptcy Code support a contrary conclusion. The ambiguity is properly resolved in favor of protecting a debtor's entitlement to a full compliance discharge under section 1328(a).

This Court holds that a Chapter 13 debtor's direct payments on a nonmodifiable, nondischargeable residential mortgage loan, provided for under section 1322(b)(5), are not "payments under the plan" for purposes of section 1328(a). A debtor's failure to complete all such direct payments is not grounds to dismiss the case without a discharge. The Debtors' failure to make their 2nd mortgage payments to PNC was the result of a misunderstanding of the requirements of their plan. The failure was not the result of a scheme to defraud or an intent to deceive anyone and unsecured creditors suffered no harm as a result of the mortgage payment default. The payments that the Debtors were required to make to the Trustee, i.e., "all payments under the plan," have been completed. Under these circumstances, the Debtors are entitled to a full compliance discharge under section 1328(a).

Accordingly, the Trustee's Motion to Dismiss will be DENIED. A separate Order will be entered. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

###

14